IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CALVIN WRIGHT

v.                                    CIVIL ACTION NO. DAF-12-2374
                                      CRIMINAL NO. 1:08-00381-DAF-2

UNITED STATES OF AMERICA

## AMENDED[1] MEMORANDUM OPINION AND ORDER

By Judgment Order entered on September 30, 2016, the
court **DENIED** Wright's "Motion to Vacate, Set Aside, or Correct
Sentence by a Person in Federal Custody," pursuant to 28 U.S.C. §
2255.  (ECF 556).  The reasons for that decision follow.

### I.  Background

Calvin Wright was charged in four counts of a five-count
superseding indictment charging him with conspiracy to distribute
heroin and cocaine, in violation of 21 U.S.C. § 846, (Count One);
possession of a firearm in furtherance of a drug trafficking
crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), (Count
Three); being a felon in possession of a firearm, in violation of
18 U.S.C. § 922(g)(1), (Count Four); and possession with intent
to distribute heroin, in violation of 21 U.S.C. § 841(a)(1),
(Count Five).  See ECF No. 321.

After a thirteen-day jury trial, Wright was found guilty
on all counts.  See ECF No. 382.  Wright was sentenced to a total
term of imprisonment of 420 months, consisting of 360 months on

---

[1] This Order is amended solely to correct the case
numbers.

Count One, 120 months on Count Four, and 240 months on Count
Five, all of which were to run concurrently, as well as a term of
60 months on Count Three to run consecutively to the other
counts.  See ECF No. 425.

On August 8, 2012, Wright filed the instant motion under
§ 2255, alleging three grounds for relief.  First, Wright
contends that his conviction on the conspiracy count was obtained
in violation of due process of law.  As for his second ground for
relief, Wright claims that his trial counsel was ineffective in
apprising him of the elements of the offense and the resulting
burdens of proof and that this failure on the part of counsel led
him to reject the government's plea offer.  Finally, Wright
argues that Count One is duplicitous and that the unanimity of
the jury's verdict is at issue.  Wright concedes that he did not
raise the first or third grounds for relief on direct appeal but
contends that appellate counsel did not follow his instructions
to do so.[2]

This matter was originally assigned to Judge Ellen Lipton
Hollander who appointed counsel to represent Wright so that an
evidentiary hearing might be held on Count Two.  The government
called into question the existence of the plea offer which Wright

---

[2] With respect to Ground One, Wright contends that
"Appellate Counsel did not follow my instructions.  Accordingly,
any failure to raise this issue should be viewed as ineffective
assistance of appellate counsel."  ECF No. 556 at p.5.  As to
Ground Three, Wright does not explain why the issue was not
raised on appeal but once again states that "[f]ailure to raise
this claim should be viewed as ineffective assistance of
counsel."  Id. at p.8.

said he rejected.  The lead prosecutor for Wright's case was the Honorable George J. Hazel, a United States District Judge for the District of Maryland and, therefore, one of Judge Hollander's colleagues.  Upon confirming that Judge Hazel might be called upon to testify in this matter, Judge Hollander recused herself from further consideration of the claims herein and the undersigned was assigned to Mr. Wright's case.

An evidentiary hearing was held on January 6, 2016, and March 1, 2016.  On the first day of the hearing, the plea offered to Wright was admitted into evidence.  See ECF No. 622.  Under the terms of the plea agreement[3], Wright would agree to plead guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or more of Heroin, violation of 21 U.S.C. § 846.  See id.  The plea agreement informed Wright that by pleading guilty he faced a maximum statutory penalty of life imprisonment.  See id.  However, the plea agreement minimized Wright's sentencing exposure as it was one under Rule 11(c)(1)(C), whereupon the parties agreed to a sentencing range of 180-240 months.  See id.  With respect to the sentencing guidelines, the plea agreement also contained a stipulation of facts whereby Wright would agree that the government could prove beyond a reasonable doubt that the amount of heroin involved in the conspiracy was at least three but less than ten kilograms.  See id.  In return for Wright's plea of guilty, the United States

---

[3] Use of the term "plea agreement" is not meant to suggest that Wright ever accepted the plea offered by the government.

agreed to recommend a sentence between 180 and 240 months imprisonment.  See id.  Wright did not accept the government's plea offer.

## II.  Legal Standard

Wright acknowledges that he failed to raise Grounds One and Three on direct appeal but contends that, in failing to do so, his appellate counsel was ineffective.  Accordingly, all three grounds for relief are essentially ineffective assistance of counsel claims.  The standards established by the United States Supreme Court in determining whether a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Under Strickland, a plaintiff must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable.  Id. at 687-91.  Counsel's performance is entitled to a  presumption of reasonableness.  Id.  Thus, a habeas plaintiff challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies.  Id. at 689.  The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered.  Id.  The Fourth

Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

Under the second prong of Strickland, a petitioner must show that the errors were "sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Furthermore, a court may address the two prongs in any order and a failure to establish one prong obviates a need to address the other. Id. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so

5

burdensome to defense counsel that the entire criminal justice system suffers as a result.").

The Supreme Court has held that a defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1405-06 (2012). However, the Court has also made clear that a defendant has "no right to be offered a plea . . . nor a federal right that the judge accept it." <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1387 (2012) (quoting <u>Frye</u> at 1410). "In <u>Lafler v. Cooper</u>, the Supreme Court held that defendants have a right to effective assistance of counsel during the plea-bargaining process, which includes counsel's advice that leads to an offer's rejection." <u>United States v. Dailey</u>, Civil No. 3:12-cv-362, 2013 WL 1768053, *4 (E.D. Va. Apr. 24, 2013) (citing <u>Lafler v. Cooper</u>, 132 S. Ct. , 1384-85 (2012)).

> In assessing counsel's performance in advising a defendant on a plea agreement, "the Fourth Circuit has held that the professional norms surrounding plea negotiations require defense counsel to do the following: 1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilty and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision."

<u>Id.</u> (quoting <u>Clark v. United States</u>, No. 07cr281, 2012 WL 253436, at *2 (D. Md. Jan. 26, 2012)).  Ineffective assistance of counsel may be shown if trial counsel provides "gross misadvice" regarding a defendant's "sentencing exposure" and,

"but for this gross misadvice, there is a reasonable probability that [defendant] would have accepted the plea agreement[.]" United States v. Merritt, 102 F. App'x 303, 307 (4th Cir. 2004); see also Magana v. Hofbauer, 263 F.3d 542, 547-48 (6th Cir. 2001) (requiring that movant show deficient performance and that, but for counsel's advice, he would have pled guilty); United States v. Gordon, 156 F.3d 376, 379-81 (2d Cir. 1998) (per curiam) (recognizing ineffective assistance of counsel claim where counsel's gross misadvice regarding potential sentencing exposure caused defendant to reject plea offer); United States v. Day, 969 F.2d 39, 42-43 (3d Cir. 1992) (same).

To satisfy the prejudice prong of the Strickland test in the context of plea negotiations, a petitioner must demonstrate a reasonable probability that:  (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence. Lafler, 132 S. Ct. at 1384-85.

A criminal defendant's right to effective assistance of counsel also requires that counsel be provided for the direct appeal of a criminal conviction.  Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc)

> In applying the [Strickland] test to
> claims of ineffective assistance of counsel on

7

> appeal, however, reviewing courts must accord
> appellate counsel the presumption that he
> decided which issues were most likely to afford
> relief on appeal.  Counsel is not obligated to
> assert all nonfrivolous issues on appeal, as
> there can hardly be any question about the
> importance of having the appellate advocate
> examine the record with a view to selecting the
> most promising issues for review.  Indeed,
> winnowing out weaker arguments on appeal and
> focusing on those more likely to prevail, far
> from being evidence of incompetence, is the
> hallmark of effective appellate advocacy.
> Although recognizing that notwithstanding
> _Barnes_, it is still possible to bring a
> _Strickland_ claim based on counsel's failure to
> raise a particular claim on direct appeal, the
> Supreme Court has recently reiterated that it
> will be difficult to demonstrate that counsel
> was incompetent.  Generally, only when ignored
> issues are clearly stronger than those
> presented, will the presumption of effective
> assistance of counsel be overcome.

_Id._ (internal citations and quotation omitted).

As our court of appeals has elaborated, "a discussion with the defendant regarding a direct appeal and what issues to pursue (if any) is critical, as `multiplying assignments of error will dilute and weaken a good case and will not save a bad one.'" _Frazer v. South Carolina_, 430 F.3d 696, 705 (4th Cir. 2005) (quoting _Jones v. Barnes_, 463 U.S. 745, 752 (1983)).

## III.  Analysis

_Ground One – Error in Instructions and Verdict Form_

As his first ground for relief, Wright contends that his conspiracy conviction was obtained in violation of the Fifth

8

Amendment right to due process of law.  According to Wright,
"drug type and quantity must be proven beyond a reasonable doubt
before a jury can return a guilty verdict on an aggravated drug
trafficking offense."  ECF 556-1 at p.6.  As to why he did not
raise this issue on direct appeal, Wright contends that his
appellate counsel did not follow his instructions to raise the
issue.

Wright's first ground for relief is without merit.
Contrary to Wright's assertions, drug type and quantity <u>were</u>
submitted to the jury and proven beyond a reasonable doubt.

The trial court's instructions to the jury were:

> In a drug distribution case, if the jury
> finds that the government has proven a defendant
> guilty of the conspiracy, then the jury must
> determine beyond a reasonable doubt what kind or
> type of drug, and what quantity of drug is
> attributable, or are attributable to the
> defendant under consideration.

ECF No. 565-8 at p. 85.  The court then went on, in great
detail, to give further instructions as to how the jury should
go about "determining the type and quantity of controlled
substance to attribute to a particular defendant."  <u>Id.</u> at pp.
85-88.

The Verdict Form in the underlying criminal case plainly
put the matter of drug type and quantity on Count One before the
jury.  <u>See</u> ECF No. 382.  It read as follows: "On Count One of
the Indictment charging **Calvin Wright** with conspiracy to

distribute a controlled substance, how do you find the defendant:" Not Guilty or Guilty.  Id.  The jury indicated that it found Wright Guilty.  See id.  Section 2(A) of the Verdict Form stated:

> If you find Calvin Wright guilty of Count One of
> the Indictment, do you find that he conspired to
> distribute a mixture or substance containing a
> detectable amount of heroin?

> _____          _____

> Yes                      No

The jury checked "Yes" on the Verdict Form.  The Verdict Form went on to ask the jury, "[i]f you answered yes to 2.A, what quantity of a mixture or substance containing a detectable amount of heroin do you find attributable to Calvin Wright?" Id.  The jury was given three choices: (a) 1 kilogram or more; (b) More than 100 grams but less than 1 kilogram; or (c) Less than 100 grams.  See id.  The jury indicated that it found 1 kilogram or more of a mixture or substance containing a detectable amount of heroin attributable to Wright.  See id.  As to Count One, the jury further indicated on the Verdict Form that "Yes", it found Calvin Wright "conspired to distribute a mixture or substance containing a detectable amount of cocaine." Id.

    To the extent that Wright's claim is that the Verdict Form was incorrect in that it asked for a finding of guilt prior

to establishing the drug weight, that objection is without merit.   Interrogatories to establish the types and amounts of drugs involved in a drug conspiracy, such as were used herein, are entirely appropriate.  <u>See, e.g.</u>, <u>United States v. Walters</u>, 350 F. App'x 826, 829-30 (4th Cir. 2009).   Furthermore, Wright did not object to the Verdict Form during the charge conference.  <u>See</u> ECF No. 480 at pp. 57-67.   Ordinarily,  a failure to object contemporaneously to a verdict form waives the issue.   However, in criminal cases, "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  Fed. R. Crim. P. 52(b); <u>see also</u> <u>Walters</u>, 350 F. App'x at 830 ("Next, the defendants challenge the district court's jury instruction on the conspiracy charge.  Because this argument was not raised at trial, our review is for plain error.").   In this case, for the reasons discussed above, there is no error in the verdict form, plain or otherwise.

Given the foregoing, it is clear that Ms. Skelton was not ineffective in failing to raise this claim on appeal.  Therefore, her performance was not ineffective under <u>Strickland</u> because Wright cannot show prejudice for her failure to raise a clearly frivolous argument.   Accordingly, the first ground advanced by Wright in his § 2255 motion does not merit habeas relief.

<u>*Ground Three – Duplicity of Count One*</u>

11

Wright's also argues that Count One is duplicitous and calls into question the unanimity of the jury verdict. Specifically, he contends that Count One charges two different conspiracies – i.e., a conspiracy to distribute heroin and a separate conspiracy to distribute cocaine.  Acknowledging that he failed to raise the issue on direct appeal, Wright argues that appellate counsel was ineffective for failing to raise it.

"[D]uplicity is the joining in a single count of two or more distinct and separate offenses." United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993) (quoting 1 Charles A. Wright, Federal Practice and Procedure § 142, at 469 (2d ed. 1982)).  "When the indictment on its face presents more than one conspiracy in a single count, such a count is improper, as it is considered duplicitous." United States v. Eury, Nos. 1:14CR39-1, 1:14CR39-5, 2015 WL 1861807, *5 (M.D.N.C. April 23, 2015) (citing United States v. Jackson, 926 F. Supp.2d 691, 700-01 (E.D.N.C. 2013)).  As our appeals court has stated:

> The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both.  Adverse effects on a defendant may include improper notice of the charges against him, prejudice in the shaping of evidentiary ruling, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than unanimous verdict as to each separate offense.

United States v. Kamalu, 298 F. App'x 251, 254 (4th Cir. 2008)
(quoting United States v. Duncan, 850 F.2d 1104, 1108 n.4 (6th
Cir. 1988) abrogated on other grounds by Schad v. Arizona, 501
U.S. 624 (1991)).

The Kamalu court goes on to explain that "two or more
acts, each of which would constitute an offense standing alone
and which therefore could be charged as separate counts of an
indictment, may instead be charged in a single count if those
acts could be characterized as part of a single, continuing
scheme." Id. (citations omitted); see also United States v.
Kernodle, 367 F. Supp. 844, 851 (M.D.N.C. 1973) ("An agreement
to commit several crimes is but one offense even though one or
more means are alleged to have been used to complete the
conspiracy. It is well settled that it is permissible to charge
a conspiracy to commit several crimes, all in one count of an
indictment without it being duplicitous.") (internal citations
omitted).  "Moreover, a duplicitous count is not to be dismissed
unless it causes prejudice to the defendant." Id. (citations
omitted).

With respect to duplicity challenges where an indictment
alleges possession with intent to distribute more than one type
of drug, this court has noted:

> The rule against duplicity "does not
> prevent an indictment from alleging more than
> one act in a single count if the acts are part
> of a continuous course of conduct." See United

> States v. Smith, 373 F.3d 562, 563-68 (4th Cir.
> 2004) (explaining that only one of the listed
> offenses needed to be demonstrated for the
> defendant to be convicted on the count because
> the offenses were part of a larger and
> "continuous scheme").  In a case factually
> similar to Petitioner's, the United States Court
> of Appeals for the Eighth Circuit succinctly
> explained why counts alleging possession with
> intent to distribute more than one type of drug
> are not duplicitous, noting that the charges are
> for "one offense, conspiracy to distribute a
> controlled substance, in two ways, with
> marijuana and methamphetamine." U.S. v. Moore,
> 184 F.3d 790, 793 (1999).  In the case at hand,
> Petitioner was convicted on a single count
> alleging possession with intent to distribute
> controlled substances.  Gov.'s Opp'n 4, ECF No.
> 63.  Although two different drugs were at issue,
> they were prosecuted under one statute as a
> "continuing offense" encapsulated in an ongoing
> course of conduct.  Smith, 373 F.3d at 563-64.

Allen v. United States, Criminal Action No. RDB 08-0222, 2013 WL

1247658, *4 (D. Md. Mar. 25, 2013) (Bennett, J.); see also

United States v. Barlin, 686 F.2d 81, 89 (2d Cir. 1982) ("The

mere fact that more than one substance is charged, however, does

not mean there are multiple conspiracies.").

As the foregoing discussion confirms, there is no merit

to Wright's duplicity claim because, even though two different

drugs were at issue, Count One properly charged a single

conspiracy to distribute controlled substances.  Furthermore,

any question on the unanimity of the jury's verdict is

undermined by the fact that a special verdict form was used

wherein the jury specifically found that Wright conspired to

distribute both heroin and cocaine.  Therefore, Wright's claim

of ineffective assistance of counsel based on appellate counsel's failure to raise the issue on appeal fails on both prongs of the Strickland analysis.  See Allen at *4-5 ("Because the count was not duplicitous, an argument in court based on duplicity would have no basis; since it is not within the wide range of professional conduct to pursue claims with no basis, counsel did not perform ineffectively with regard to the first Strickland prong.  As to the second prong, which asks if actual prejudice occurred, . . . "[b]ecause the duplicity assertion lacks merit, it is improper to assume its consideration would have altered the proceedings."); see also Orbe v. True, 233 F. Supp.2d 749, 765 (E.D. Va. 2002) ("When ineffective assistance claims are based on the failure to raise, develop, or properly present an underlying claim, an examination of the merits of the underlying claim will frequently be dispositive of the ineffective assistance claim.  If the underlying claim is meritless, counsel's failure to pursue it can be neither unreasonable nor prejudicial, and no further inquiry is necessary.").[4]

---

[4] Wright's duplicity argument would have failed for the additional reason that it was not raised prior to trial.  See United States v. King, 628 F.3d 693, 699 (4th Cir. 2011) ("[W]e note that King has waived his duplicity challenges because he failed to raise them prior to trial."); see also United States v. Burney, 441 F. App'x 993, 995 (4th Cir. 2011) ("A challenge to a defect in the indictment must be brought before trial.").

_Ground Two – Failures Surrounding Plea Agreement_

Wright filed an affidavit, sworn to under penalty of perjury, that stated the following:

> 2.     I instructed Mr. Edwards[5] to seek a plea agreement with the Prosecuting Attorney. The Prosecuting Attorney presented an 11(c)(1)(C) plea for 15 years.  Mr. Edwards advised me not to accept the plea offer because the Government could not establish the drug weight of three (3) to ten (10) kilograms of heroin.

ECF No. 556-2; see also Reply Brief for Calvin Wright (ECF No. 571) at p. 7 ("To be clear, Mr. Wright is claiming that Mr. Edwards informed him that the Government could not prove a conspiracy to distribute 3 to 10 kilograms of heroin, and that Mr. Wright should not accept a plea agreement in which Mr. Wright would be required to admit to a greater drug quantity than the Government could prove."); Memorandum in Support of § 2255 Motion (ECF No. 556-1) at p. 14 ("It is equally clear that Counsel focused on incorrect legal standards when advising Mr. Wright not to accept the Government's plea offer.").

By the time Wright testified at the evidentiary hearing in this matter, on January 6, 2016, his testimony regarding the advice he received from counsel concerning the proposed plea agreement had changed in certain respects.

> Q:     And do you recall the terms of the plea offer?

---

[5] Assistant Federal Public Defenders Malik Edwards and Joseph Balter represented Wright at trial.

A:      I just, I remember it being 15 years.
        And the drug weight was 3 to 10 kilos.

Q:      And why did you - - well, did you accept
        or reject the plea offer?

A:      I rejected the plea offer because my
        original indictment was for 100 grams or
        more.  They superseded me for a kilo or
        more.  Then when I get the indictment,
        the indictment is for more, even more
        drugs, 3 to 10 kilos.

Q:      The indictment or the - -

A:      I mean the plea offer was for more drugs
        than the indictment was for.

Q:      So why did you turn down the plea offer?

A:      Because, because of the drug weight.

Q:      What was your understanding as far as - -

A:      That they had to prove the 3 to 10 kilos
        at trial.

Q:      And did you discuss this with your
        attorneys?

A:      Yes.

Q:      Did they agree that they had to, the
        government would have to prove 3 to 10
        kilos?

A:      They agreed to, to what I said.  I'm
        saying like they couldn't prove, they
        would have a hard time proving the kilo
        and the 3 to 10 kilos.  They was
        hopscotching for real.  And I felt - - so
        I asked them to go back and ask for 10
        years.

Q:      Okay.  And did they, do you know?

A:      Yes.

Q:      And what was the response?

A:      They, the government declined.

17

Q:      Did either attorney ever tell you what
        they thought your chances were of winning
        at trial?

A:      I mean, you know, they say it was, they
        say they were 50/50 because they were
        going to do their best.

Court:  50/50 to be acquitted or 50/50 on the
        drug weight?

A:      I mean, I know I wasn't going to get
        acquitted, but not 50/50 on the drug
        weight.  Just 50/50 of, you know, of
        going to trial.  You know, they say, you
        know, might, I might win, might lose.
        You know what I'm saying?

Court:  You said you knew you would not be
        acquitted, is that right?

A:      I felt like with the, you know, the
        weight against me, I didn't feel like I,
        I didn't feel like, you know, I could
        win.  But I felt like I could at least,
        the time they were offering on the plea
        agreement, I felt like I could get that
        at trial.  And they agreed with me.

Q:      So is it your understanding that if you
        went to trial, the government had to
        prove only one kilogram?

A:      Yeah.  I felt like if, if I went to trial
        and I got found guilty of a kilo, I felt
        like I would be sentenced for a kilo.

Q:      Whereas with the plea offer under the 3
        to 10 kilos, you would be sentenced to
        whatever the agreement said, which was 15
        to 20 years?

A:      Yes.

Q:      So you, did you think you were getting a,
        it would be better for you to go to
        trial, as opposed to taking the plea
        offer?

A:      I felt like if I went to trial, I could
        get the same time and have my, and keep
        all my appeal rights.

Court:  Did your lawyers advise you that the drug
        weight for sentencing would be whatever
        you were found guilty of at trial?

A:      No, they did not.  That's my whole
        argument.

Q:      What did your attorneys explain to you
        about how, what you would be sentenced
        on?

A:      As far as they were, as far as we were
        concerned, we were, I was going to be
        sentenced for a kilo or more.  I mean, a
        kilo.  Or more, just, I found that out at
        sentencing.

Q:      You found at what?

A:      What "or more" meant.

Q:      Mr. Wright, did your attorneys explain to
        you the burden of proof at sentencing in
        regard to weight?

A:      No.

Q:      According to the plea offer, what was the
        burden of proof that was mentioned in the
        plea offer concerning the 3 to 10
        kilograms?

A:      I got to look.

Q:      Mr. Wright, if you will look - - do you
        need to refresh your recollection?

A:      Yes.  I was trying to find it in here.
        Yeah.

Q:      Paragraph Six.

A:      Yeah.  The plea offer says the offense
        conspiracy to distribute and possess with
        intent to distribute at least 3
        kilograms, but less than 10 kilograms.

Q:      Okay.

A:      But it says prove beyond a reasonable
        doubt.

Q:      So is your understanding that they would
        have to prove beyond a reasonable doubt -
        - excuse me - - 3 to 10 kilos?

A:      Yes.

Q:      And that you agreed to the beyond a
        reasonable doubt if you signed, if you
        agreed to the - -

A:      Yes.

Q:      - - accepted the offer?

A:      Yes.  That's why I didn't accept it.

Q:      So it was your understanding, then, that
        the government would have to prove 3 to
        10 kilos?

A:      At trial.

Q:      At trial?

A:      Yes.

Q:      And did your attorneys tell you whether
        they thought they could prove that or
        not?

A:      They, they didn't explain it right.  You
        know what I'm saying?  Like all - - my
        understanding and their understanding,
        they agreed with me that if I went to the
        trial, I could get the same time that
        they was basically offering in the plea
        offer.

                        * * *

Q:      If you had understood the plea offer and
        how the sentencing worked had you gone to
        trial, would you have taken, accepted the
        plea offer?

A:      I would have accepted the offer if I'd
        have known going to trial that they would
        have just had to, I get found guilty of
        the bare minimum of a kilo and I could be
        sentenced to whatever the drug weight the
        drug, I mean the judge found to be by the
        preponderance of the evidence.  The plea

                        20

                agreement says "beyond a reasonable
                doubt."  When I got sentenced, the judge
                said "by preponderance of the evidence."
                And if I'd known that, how can you win?

Court:  Did you think the reasonable doubt
        standard would apply at sentencing?

A:  The reasonable doubt?

Court:  Going to drug weights at sentencing?

A:  No.  I thought that the kilo was just,
        the kilo, I thought the kilo was what I
        was going to be sentenced for if I got
        found guilty.  And that's a level - - I
        don't know.  Level 30 or something like
        that.

Court:  Why did you think that?

A:  Because of the sentencing guidelines.

Q:  . . . Did you think that if you were
        convicted at trial –

A:  yes.

Q:  - - that you would only be sentenced to,
        for one kilogram?

A:  Yes.

Q:  And not 3 to 10 kilograms?

A:  And not 3 to 10.  Not 3 to 10 kilograms.

Q:  And again, if you had understood exactly
        how the process worked, you would have
        accepted the plea offer?

A:  I would have accepted the plea offer.

                      * * *

Q:  This plea agreement that we've been
        discussing - - if I can return to it for
        just a second - - with whom did you
        discuss it, specifically?

A:  Joe Balter and Malik Edwards.

Q:      And were they together when they
        discussed it with you?

A:      Yes.

Q:      And where did you have that discussion?

A:      At, well, it's called CDF now but it was
        Supermax then.

Q:      And they were both there?

A:      Yes.

Q:      And you had a copy of the plea agreement
        at that time?

A:      Yes.

Q:      For how long did you discuss the
        agreement?

A:      I can't recall.  That was six years ago.
        I can't recall.  Hour.  Half an hour.  I
        don't remember.

Q:      And just to be clear.  Their advice to
        you was that you reject this plea
        agreement?

A:      Their advice to me was that at trial I
        would, I could get the kilo, that, you
        know, what I agreed to, that I could get
        the same time that they were offering in
        the plea agreement at trial.

Q:      So their advice to you was that they
        believed the government could not prove
        more than 3, but less than 10, kilograms
        of weight at trial?

A:      Yes.

Q:      And on that basis, you should reject the
        plea?

A:      Yes.  I rejected the plea.

ECF No. 624, at pp. 13-19, 23-24 (Transcript of January 6, 2016

Hearing).

Wright's assertions were contradicted by the testimony of both Mr. Edwards and Mr. Balter.  Regarding his familiarity with the interplay between the drug conspiracy statute and the guidelines, Mr. Malik Edwards, Wright's attorney, testified:

> Q:   And are you familiar with the criminal provisions of Title 21 of the United States Code?
>
> A:   Yes.
>
> Q:   Generally familiar with the elements of the principal offenses?  For example, possession with intent to distribute or conspiracy?
>
> A:   Yes.
>
> Q:   Familiar with the elements that the government must prove to charge someone with a sentence carrying a mandatory minimum?
>
> A:   Yes.
>
> Q:   And what is - - in order to prove a sentence carrying a mandatory minimum, in general, what does the government need to prove?
>
> A:   . . . What was the question?
>
> Q:   The question was, as a general matter, does the, what does the government need to demonstrate in order to prove a possession or conspiracy charge carrying a mandatory minimum sentence in federal court?
>
> A:   Well, the question is centered around the mandatory minimum part.  My, my recollection of the statute was that certain amounts of drugs triggered certain mandatory minimums.  And the government would have to prove that, that, well those amounts.  They'd have to prove those amounts.

Q:      By what standard?

A:      For mandatory minimums, beyond a
        reasonable doubt.

Q:      And are you also familiar with the United
        States Sentencing Guidelines from your
        work as an assistant federal public
        defender?

A:      I am.

Q:      And familiar with the sentencing
        guidelines that apply to narcotics cases?

A:      Yes.

Q:      And in general, what is the principal
        factor in determining a narcotics
        guidelines sentence?

A:      Sentencing guidelines had, well, a number
        of charts related to drug offenses.
        There's a drug quantity table that, that
        associated certain guideline ranges to
        certain amounts of drugs.

Q:      And would you agree with me that the
        standard of proof that applies for
        calculating those amounts is something
        less than beyond a reasonable doubt?

A:      In the sentencing context, yes.

ECF No. 626, at pp. 5-7 (Transcript of March 1, 2016 Hearing).

        As to Wright's sentencing exposure, Mr. Edwards

testified:

Q:      And did you, do you recall making any
        calculation about Mr. Wright's sentencing
        exposure if he was convicted at trial?

A:      Yes, I'm sure I did.

Q:      Did you discuss the maximum possible
        sentence that he might receive?

A:      Yes.

> Q:      And would you agree that Mr. Wright faced
>         a maximum sentence of life imprisonment,
>         given the charge of possession with
>         intent to distribute one kilogram or more
>         of heroin?
>
> A:      Yes.

Id. at 9; see also id. at 21-22 (explaining how he would have

discussed Wright's sentence exposure with him).

The court does not find Wright to be an entirely

credible witness as certain portions of his testimony before the

court were obviously untruthful.  For example, Wright maintained

that Edwards told him not to accept the plea agreement.

Specifically, in his sworn affidavit, Wright averred:

> 2.      I instructed Mr. Edwards to seek a plea
>         agreement with the Prosecuting Attorney.
>         The Prosecuting Attorney presented an
>         11(c)(1)(C) plea for 15 years.  Mr.
>         Edwards advised me not to accept the plea
>         offer because the Government could not
>         establish the drug weight of three (3) to
>         ten (10) kilograms of heroin.

ECF No. 556-2; see also Memorandum of Law in Support of Motion

to Vacate (ECF No. 556-1 at p.14) ("Mr. Wright claims Mr.

Edwards advised him the evidence could not support a conviction

for a conspiracy to distribute 3 to 10 kilograms of heroin. . .

[I]t is equally clear that Counsel focused on incorrect legal

standards when advising Mr. Wright not to accept the

Government's plea offer."); Reply Brief for Calvin Wright (ECF

No. 571) at p. 7 ("To be clear, Mr. Wright is claiming that Mr.

Edwards informed him that the Government could not prove a

conspiracy to distribute 3 to 10 kilograms of heroin, and that

Mr. Wright should not accept a plea agreement in which Mr.

Wright would be required to admit to a greater drug quantity than the Government could prove.").

However, Mr. Edwards testified as follows:

Q:      And can you tell us how those plea discussions came about or what they entailed?

A:      If I recall, I think the government had made overtures from early on in the case, overtures that, you know, asking, you know, if Mr. Wright is interested in a plea and even cooperating early on. . . . Mr. Wright was steadfast in his innocence the whole time and so he did not want to entertain the government's overtures.

        On the eve of trial, the government made one more overture and, actually, it sort of made an offer that I felt was worth bringing to Mr. Wright's attention, and did just that.  You know, went over the offer with him.  And he maintained his innocence and didn't want to accept the offer.

                        * * *

Q:      Just to be clear.  What was your recommendation to Mr. Wright about whether he should accept or reject this agreement?

A:      I believe I recommended that he should accept the agreement.

Q:      Did Mr. Balter concur in that advice?

A:      I believe so.

                        * * *

Q:      The third sentence [of Wright's affidavit] reads, quote: "Mr. Edwards advised me not to accept the plea offer because the government could not establish the drug weight of 3 to 10 kilograms of heroin."  Close quote.  Is that an accurate statement?

A:      That's not my recollection.

Q:      Did you have any understanding based on
        the discovery that you received in the
        criminal case against Mr. Wright as to
        what drug weight the government might
        eventually be able to establish at trial,
        or at sentence?

A:      Did I have an understanding?

Q:      Yes.

A:      Yes.  In fact, you know, my recollection
        is that it might have even been more than
        this 3 to 10 kilograms.  I remember it
        being a very large case, I should say, a
        large conspiracy case.  And I think Mr.
        Wright's exposure was, was pretty high.

Q:      Did you advise him of that fact, that the
        government might prove more than 3 to 10
        kilograms of heroin at trial or at
        sentencing?

A:      I can't remember if I said an exact
        amount.  I mean, the nature of the
        conversations that I do remember was
        that, you know, he had a lot of exposure
        and the evidence that the government had
        provided us that they would show at trial
        struck me as, that we'd have a very
        difficult chance of prevailing at trial,
        which my advice was for him to take a
        plea.

Q:      Let me direct your attention to Paragraph
        3.  It reads, quote: "Mr. Edwards
        informed me that the drug weight was an
        element of the offense which the
        government had to prove beyond a
        reasonable doubt to sustain a conviction
        for conspiracy to distribute 3 to 10
        kilograms of heroin."  Is that an
        accurate statement?

A:      I don't believe so, no.

Q:      Why not?

A:      The, well, especially in the context of
        this plea agreement, Page 2, Paragraph 3.

27

Q:      You're referring to Petitioner's Exhibit
        1?

A:      I believe so, yes.  That, that paragraph
        says rather explicitly what the
        government would have to prove beyond a
        reasonable doubt in terms of the statute,
        at least for that charge.  And so I would
        explain that in terms of what the
        government had to prove beyond a
        reasonable doubt if it would have been
        that, whatever the amount it says in
        here.  And then also have gone over
        Paragraph 6, what the guidelines
        stipulation was.  And, you know,
        generally as an attorney, as a defense
        attorney, the different standards of
        proof for, in the sentencing context and
        in the trial.

Q:      Let me direct your attention to Paragraph
        4 on Page 2 of Mr. Wright's affidavit.
        It reads, quote: "If Mr. Edwards would
        have advised me of the fact that the drug
        weight could be determined by the judge
        by a mere preponderance of the evidence,
        once the jury finds the threshold drug
        quantity, I would have accepted the
        prosecutor's plea offer."  Close quote.

                Now I recognize that you can't
        speak to specifically what was in Mr.
        Wright's mind.  But did Mr. Wright, at the
        time you discussed Petitioner's Exhibit 2
        in 2010, did he suggest to you in any way
        that that drug quantity was the, the
        reason that he did not accept the plea
        agreement?

A:      My recollection was he, Mr. Wright did
        not want to accept the plea agreement
        because he didn't believe that he was
        guilty of what he was charged with.

                        *  *  *

Court: Mr. Edwards, did the reason he, Mr.
       Wright, felt he was not guilty was
       because of the conspiracy implications
       and the fact that he didn't feel like he
       could or should be held responsible for

the entire, for the drug weight for the
entire conspiracy?

A:      My recollection, Your Honor, is that Mr.
        Wright felt that he was innocent and
        wasn't guilty of anything that was
        charged in the indictments against him.

                    *  *  *

Q:      And to be clear, your advice to him was
        not that he should reject this plea
        agreement because of an amount of heroin
        the government could or couldn't prove at
        trial?  Is that accurate?

A:      Yeah.  No. My advice was to accept the
        plea offer.

ECF No. 626 at 9-10, 12, 16-19, 25-26.

Mr. Balter, Wright's other attorney, also recommended

that Wright accept the plea agreement.

Q:      Did you, do you recall anything specific
        about the meeting as far as reviewing the
        agreement with Mr. Wright?

A:      My note reflects the fact that I
        recommended the agreement and he rejected
        it.

ECF No. 626 at 30.

Therefore, Wright's self-serving assertions, at various

points in time, that Mr. Edwards advised him to reject the plea

offer is plainly contradicted by the testimony of Mr. Edwards

and Mr. Balter.  The court finds Mr. Edwards and Mr. Balter to

be the more credible sources on this point of contention.

Likewise, the court does not find credible Wright's

assertions that Mr. Edwards told him that the government "could

not establish the drug weight of three (3) to ten (10) kilograms

of heroin" given Mr. Edwards' completely contradictory

29

testimony.  See ECF No. 626 at 16 ("In fact, you know, my recollection is that it might have even been more than this 3 to 10 kilograms.  I remember it being a very large case, I should say, a large conspiracy case.  And I think Mr. Wright's exposure was, was pretty high.").  Finally, the court finds credible Mr. Edwards' testimony that he advised Wright of his sentencing exposure.

In sum, the court cannot find that Mr. Edwards' advice to Wright in connection with the proposed plea agreement was objectively unreasonable, in large part, because it does not credit Wright's version of what happened.  His "shifting allegations" regarding the advice he allegedly received from trial counsel severely undermine his credibility.  Mattox v. United States, No. 3:10-CR-1(CAR), 2013 WL 5965321, *7 (M.D. Ga. Nov. 7, 2013) ("Further, Petitioner's shifting allegations, as illustrated by the stark differences between what Petitioner alleged in his Section 2255 Motion and what Petitioner alleged at the evidentiary hearing, also cast doubt on his credibility.").

In addition, a number of Wright's allegations regarding the advice Mr. Edwards gave him, even if true, do not establish that counsel was ineffective.  For example, to the extent that Wright argues counsels' predictions about his likelihood of success or what the government could prove at trial were not accurate, that does mean his attorneys were ineffective.  A claim for ineffective assistance of counsel will not succeed

merely because a lawyer's prediction does not become reality. Lafler v. Cooper, 132 S. Ct. 1376, 1391 (2012) ("[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance.").

Furthermore, Wright cannot demonstrate Strickland prejudice in connection with his attorney's handling of the proposed plea. Even if the court were to assume that Wright would have accepted the plea offer but for counsel's ineffective assistance, he has not shown that the plea offer would have been entered without the trial court refusing to accept it. Indeed, Wright offered no evidence on this point and the court believes that there is an increased probability that a plea agreement will be rejected by a sentencing court when it is one under Rule 11(c)(1)(C) because the court's sentencing discretion is fettered by agreement of the parties. See, e.g., United States v. Seidman, 483 F. Supp. 156 (E.D. Wis. 1980) ("At the outset, the Court would note that it never will accept a Rule 11(e)(1)(C) type plea agreement. It is this Court's prerogative to determine the type of sentence that should be imposed upon a defendant for the offense of which he or she has been adjudged guilty."); United States v. Alatorre, Nos. CR 09-42-BLG-RFC, CV 11-28-BLG-RFC, 2011 WL 1743843, *1 (D. Mont. May 4, 2011) ("At sentencing, I accepted the plea agreement, even though I almost never accept binding agreements under Rule 11(c)(1)(C).").

Therefore, Wright's motion under 28 U.S.C. § 2255 was **DENIED** in its entirety and the Clerk was directed to remove the matter from the court's docket.

Additionally, the court has considered whether to grant a certificate of appealability.[6] See 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record and unrepresented parties.

**IT IS SO ORDERED** this 19th day of October, 2016.

ENTER:

David A. Faber
Senior United States District Judge

---

[6] The time to appeal runs from the filing of the Judgment Order and not this Memorandum Opinion.

32