IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

CALVIN WRIGHT,
*Defendant*.

CRIMINAL No. ELH-08-0381

**MEMORANDUM OPINION**

This Memorandum Opinion resolves two motions for sentence reduction filed by the self-represented defendant, Calvin Wright, in connection with his convictions for various drug and firearm offenses. *See* ECF 760, ECF 771. Defendant also seeks appointment of counsel. ECF 777.[1]

On April 28, 2010, Judge Benson E. Legg, to whom the case was then assigned, sentenced defendant to a total of 420 months of incarceration. ECF 425 (Judgment).[2] In October 2016, through counsel, Wright filed a motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines. *See* ECF 642. By Memorandum (ECF 667) and Order (ECF 668) of March 9, 2018, I reduced defendant's sentence from 420 months of imprisonment to 384 months of imprisonment. ECF 668. Then, defendant moved for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 697, ECF 717, ECF 719.[3]

---

[1] Of relevance, I previously appointed counsel for defendant in connection with his first motion for compassionate release. *See* ECF 709. At this time, however, I am satisfied that Wright has ably presented his contentions. Therefore, I shall deny his request for counsel (ECF 777).

[2] The case was reassigned to me on August 9, 2012. *See* Docket.

[3] Defendant filed ECF 697 without counsel. ECF 717 and ECF 719 were filed by appointed counsel.

By Memorandum Opinion (ECF 752) and Order (ECF 753) of June 10, 2022, I reduced defendant's sentence to 250 months of incarceration. ECF 754 (Amended Judgment).

Dissatisfied with that ruling, defendant filed a "Motion for Reconsideration." ECF 771. He asks for "immediate release" or, alternatively, that his sentence be reduced an additional "18 months or 12 months." *Id.* at 2. I shall construe the motion as a Motion for Compassionate Release. It is supported by five exhibits. ECF 771-1 through ECF 771-5.

In support, defendant primarily argues that the Bureau of Prisons ("BOP") has incorrectly determined that, based on his convictions, he is ineligible to receive First Step Act credits, which, in turn, affects his sentence. *Id.* at 1–2. Defendant raises a similar argument with respect to Residential Drug Abuse Program ("RDAP") credits, and also points generally to his rehabilitation efforts. *See id.*

Defendant has also moved for reduction of sentence under 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). ECF 760. The motion is supported by three exhibits. ECF 760-1 through ECF 760-3. Wright also filed a supplement to the motion. ECF 776. I shall refer to ECF 760 and ECF 776 collectively as the "821 Motion." In the 821 Motion, defendant contends that his sentence was based, at least in part, on a sentencing range that was lowered by Amendment 821. ECF 760. The Office of the Federal Public Defender has declined to supplement the 821 Motion. ECF 775.

In a consolidated response, the government opposes both motions. ECF 778 ("Opposition"). Defendant filed a consolidated reply. ECF 779 ("Reply").

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall deny the motions.

## I. Factual and Procedural Background[4]

Wright was one of ten defendants in the case. Only two defendants—Wright and Johnnie Butler—proceeded to a jury trial on a Fourth Superseding Indictment (ECF 321). Judge Legg presided at the 13-day trial. *See* ECF 336; ECF 342; ECF 352; ECF 353; ECF 365 through ECF 368; ECF 370 through ECF 373.[5]

The jury returned its verdict on January 29, 2010. ECF 383. Wright was convicted of Count One, conspiracy to distribute one kilogram or more of heroin and conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and (b)(1)(C); Count Three, charging possession of a firearm on September 11, 2008, in furtherance of the drug conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i); Count Four, charging possession of a firearm by a convicted felon, under 18 U.S.C. § 922(g)(1); and Count Five, charging possession with intent to distribute heroin on September 11, 2008, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *Id.*

Butler was also convicted of Counts One, Three, and Four. He was not charged in Count Five. *See* ECF 321; ECF 383. But, Butler was charged in Count Two, alleging charged discharge of a firearm, causing the death of Fernando Rodriguez, in furtherance of a drug trafficking crime. *Id.* at 5. Notably, Wright was not charged in Count Two. *Id.* Butler was found not guilty as to Count Two. ECF 383.[6]

---

[4] I incorporate by reference the factual and procedural background set forth in my Memorandum Opinion of June 10, 2022, resolving defendant's first motion for compassionate release. ECF 752.

[5] The Docket omits reference to Day 3 of the trial.

[6] Judge Legg found persuasive the evidence that Butler murdered Rodriguez. ECF 481 at 36. And, he found that Wright assisted in disposing of the corpse. *Id.* at 22.

The Presentence Report ("PSR", ECF 751)[7] reflected that Counts One, Four, and Five were grouped for purposes of calculating Wright's Guidelines range, but Count Three did not group. *See id.* ¶ 16; *see also* U.S.S.G. § 3D1.2(b). For the grouped offenses, defendant had a base offense level of 36, in accordance with the drug quantity table then in effect. *See* ECF 751, ¶ 18; *see also* U.S.S.G. § 2D1.1(c)(2). In particular, the amount of cocaine involved at least 15 kilograms but less than 50 kilograms and the amount of heroin involved at least 10 kilograms but less than 30 kilograms. ECF 751, ¶ 18. Four levels were added based on defendant's role in the offense, pursuant to U.S.S.G. § 3B1.1(a). *See id.* ¶ 21. There were no deductions for acceptance of responsibility. *Id.* ¶ 24. Thus, according to the PSR, Wright had an adjusted offense level of 40 for Counts One, Four, and Five. *Id.* ¶ 23. And, as to Count Three, Judge Legg was required to impose a mandatory minimum sentence of five years, consecutive, under 18 U.S.C. § 924(c) and § 2K2.4(b) of the Guidelines. *Id.* ¶ 26; *see also* ECF 481 (Sentencing Transcript).

Wright was 38 years old at the time of sentencing on April 28, 2010. ECF 419; *see* ECF 751 at 1. The government argued for a base offense level of 36, based on a drug quantity in the 10 to 30 kilogram range. ECF 481 at 5. As to the four-level enhancement for role in the offense, the government described Mr. Wright as "sort of the second in command, so to speak." *Id.* at 13. Defense counsel disputed the quantity of drugs foreseeable to Wright. *Id.* at 10–11. The defense argued for a drug quantity of one kilogram (*id.* at 12), and urged a final offense level of 34 for the grouped offenses. *Id.* at 12, 31–32.

As to the grouped offenses, Judge Legg determined that Wright had a final offense level of 40. *Id.* at 17. Judge Legg noted the "extensive nature of the conspiracy," among other things, and

---

[7] The PSR was not docketed at the time it was prepared. However, I located it in Judge Legg's file and submitted it for docketing in June 2022.

found that "10 kilograms or more is the reasonable quantity to plug into the guidelines in the drug quantity table." *Id.* at 15. He recognized that Wright "played a subordinate role to Mr. Butler," and that Butler "was definitely the mastermind and the leader of the overall conspiracy." *Id.* at 16. Nevertheless, Judge Legg determined that a four-level enhancement applied due to Wright's role in the offense. *Id.* at 16–17. Although Judge Legg did not attribute the murder of Rodriguez to Wright, he observed that Wright assisted in disposing of the body. *Id.* at 22.

The PSR reflected a criminal history category of IV. ECF 751, ¶ 36. In particular, defendant had a 2003 federal drug conviction for distribution of cocaine, for which he was sentenced by Judge Motz to 24-months of incarceration, followed by three years of supervised release. *Id.* ¶ 29; *see* JFM-02-0527. In 2007, defendant was convicted in Maryland of driving while impaired ("DWI") and related offenses. ECF 751, ¶ 31. He received probation and a fine. *Id.* Also in 2007, defendant pleaded guilty in the Circuit Court for Howard County, Maryland to the offense of trespassing. *Id.* ¶ 32. Wright received a 90 day sentence, all suspended, and one year of probation. *Id.*

Defendant received four criminal history points based on the above offenses. *See id.* ¶¶ 29, 31, 32. But, Wright committed the underlying offenses while on supervised release in the federal drug case and probation in the DWI case. *Id.* ¶ 34. Therefore, two "status points" were added under U.S.S.G. § 4A1.1(d). *Id.* And, he committed the instant offenses less than two years after his release from incarceration on July 8, 2003, for his prior federal offense. *Id.* ¶ 35. As a result, one "recency point" was added, pursuant to U.S.S.G. § 4A1.1(e). *Id.*[8]

---

[8] As I discuss in more detail, *infra*, as to a defendant under a criminal justice sentence, Amendment 821 to the Guidelines permits the assignment of only one status point, and then only if a defendant has seven or more criminal history points. *See* U.S.S.G. § 4A1.1(e). Moreover, as part of Amendment 742 to the Guidelines, recency points were eliminated, effective November 1, 2010. *See* U.S.S.G. § 4A1.1 (2010 Amendments, Editor's and Revisor's Notes). But, unlike

With a final offense level of 40 and a criminal history category of IV, the Court found that the Guidelines range for the grouped offenses was 360 months to life imprisonment. ECF 481 at 17; ECF 426; *see also* ECF 751, ¶ 45. And, as noted, Count Three required a mandatory minimum sentence of 60 months (five years), consecutive. ECF 751, ¶ 42.

The government sought a sentence for Count One of 530 months, *i.e.*, 45 years. ECF 481 at 25. Given that Count Three required a consecutive sentence of five years, the government sought a total sentence of 50 years of imprisonment. *Id.* at 25, 26. It provided sound reasons for its recommendation. In addition to the murder of Rodriguez, the government cited the murder of Sentia Mason, for which charges were pending in State court. *Id.* at 20, 21. No testimony was presented at the trial as to that murder, but the government argued that Wright again "serv[ed] as cleanup guy helping his boss [*i.e.*, Butler] . . . to get away with a very heinous crime." *Id.* at 22–23.

Judge Legg observed that the defendant came from "a good family, very well educated, responsible . . . ." *Id.* at 35. Moreover, he described Wright as "articulate" and "intelligent." *Id.* at 36. But, he described the drug conspiracy as "systematic," involving firearms and violence. *Id.* at 36, 37. Nevertheless, he declined to attribute the Mason murder to Wright. *Id.* at 36. With full knowledge of all the underlying facts and circumstances, Judge Legg determined that the government's proposed total sentence of 50 years was "too long measured against Mr. Wright's age and his life expectancy . . . ." *Id.* at 37. Judge Legg reasoned, *id.*: "In my view, the guideline sentence in this case is a reasonable sentence to impose, that serves the goals and recognizes the seriousness of the offense, deterring the defendants, deterring others."

---

Amendment 821, Amendment 742 was not made retroactive by the Sentencing Commission. *See* U.S.S.G. § 1B.10(d).

In particular, Judge Legg sentenced Wright to a term of 360 months as to Count One; the mandatory minimum sentence of 60 months, consecutive, as to Count Three; 120 months, concurrent, as to Count Four; and 240 months, concurrent, as to Count Five. This amounted to a total term of imprisonment of 420 months (35 years). ECF 425 (Judgment), at 2.

Wright subsequently noted an appeal. ECF 428. The Fourth Circuit affirmed on May 18, 2011. ECF 509. The mandate issued on June 9, 2011. ECF 511.

On August 8, 2012, Wright filed a motion to vacate under 28 U.S.C. § 2255. ECF 556. The next day, on August 9, 2012, the case was reassigned to me, due to the retirement of Judge Legg. On October 1, 2014, I ordered the appointment of counsel for Mr. Wright. ECF 594.

Thereafter, on November 26, 2012, Butler, the codefendant, filed a post-conviction motion. *See* ECF 564. During the course of post-conviction proceedings as to Butler, the government submitted the affidavit of the former lead prosecutor, George Hazel. ECF 611-1. By that time, Mr. Hazel had become Judge Hazel, a colleague of mine on this Court. Therefore, on January 16, 2015, I recused myself from further consideration of the case and requested an out-of-district assignment. ECF 612.

On February 3, 2015, Butler's case was transferred to Judge David Faber, who serves in West Virginia. *See* Docket. A few days later, Wright's case was also transferred to Judge Faber.

By Order of September 30, 2016, Judge Faber denied Wright's motion to vacate under § 2255. *See* ECF 641. Judge Faber subsequently issued a comprehensive, well reasoned Memorandum Opinion and Order on October 13, 2016 (ECF 644), which he subsequently amended (ECF 648), denying Wright's § 2255 motion and denying a certificate of appealability. ECF 648. The Fourth Circuit denied a certificate of appealability and dismissed Wright's appeal on February 22, 2017. ECF 655. The Mandate issued on April 17, 2017. ECF 657.

On October 11, 2016, soon after Judge Faber had ruled, Wright, through counsel, filed a motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the Guidelines.  *See* ECF 642.  The case was returned to me on March 6, 2018 (*see* Docket) for disposition of the motion for reduction of sentence.  I granted the motion by Memorandum (ECF 667) and Order (ECF 668) of March 9, 2018.  As a result, defendant's total sentence was reduced from 420 months of imprisonment to 384 months of imprisonment.  ECF 668.  Specifically, I reduced Wright's sentence for Count One from 360 months to 324 months, and left the remainder of his sentence unchanged.  *Id.*

Then, on October 2, 2020, defendant filed a pro se motion for compassionate release.  ECF 697.  Subsequently, through appointed counsel, *see* ECF 709, defendant filed a supplement to his pro se compassionate release motion.  ECF 717; ECF 719.  I shall refer to ECF 697, ECF 717, and ECF 719 collectively as the "First Motion."  The government opposed the First Motion.  ECF 728.

By Memorandum Opinion (ECF 752) and Order (ECF 753) of June 10, 2022, I granted the First Motion, in part.  I determined that defendant had established an extraordinary and compelling reason for compassionate release, based on certain health conditions, the COVID-19 pandemic, and the length of defendant's sentence compared to more recent, shorter sentences for equally serious crimes.  ECF 752 at 28, 32.  As to the sentencing factors in 18 U.S.C. § 3552(a), I highlighted defendant's "substantial rehabilitative efforts" while incarcerated, including that he earned his GED and took other vocational and educational courses.  *Id.* at 34.  I also gave defendant credit for his relatively minor BOP disciplinary record.  *Id.*  At the same time, I recognized that defendant's crime was "extremely grave" and that Wright has a "serious criminal history."  *Id.* at 30.  I concluded that "the length of defendant's sentence; his rehabilitative efforts; his disciplinary

record; and his medical conditions, combine[d] to create a basis for a reduction of defendant's sentence." *Id.* at 34–35.

Therefore, I reduced defendant's total sentence from 384 months of incarceration to a total of 250 months of incarceration. *Id.* at 35, 36; *see also* ECF 754 at 2. Specifically, I reduced the sentence for Count One from 324 months to 190 months; left unchanged the mandatory minimum consecutive sentence of 60 months for Count Three; left unchanged the 120-month concurrent sentence for Count Four; and reduced the sentence for Count Five from 240 months to 190 months, concurrent with Counts One and Four. ECF 752 at 36; ECF 754 at 2.

Defendant is now 53 years of age. *See* ECF 751 at 1. He is presently incarcerated at FCI Petersburg Medium in Virginia. https://www.bop.gov/inmateloc/ (search by BOP register number 40551-037) (last accessed May 16, 2025). Defendant has served approximately 200 months of his 250-month sentence, or approximately 80 percent. He has a projected release date of October 17, 2026. https://www.bop.gov/inmateloc/.

## II. Legal Standards

### A. Motion for Reconsideration

As noted, defendant has moved for reconsideration (ECF 771) of the ruling of this Court issued on June 10, 2022 (ECF 752; ECF 753), by which I reduced defendant's total sentence from 384 months of imprisonment to 250 months of imprisonment. The motion (ECF 771) was docketed on April 29, 2024. *See* Docket. Defendant's Certificate of Service is dated April 23, 2024. ECF 771 at 2. Thus, the motion was filed almost two years after the Court issued its Order of June 10, 2022. *See* Docket.

Notably, the Fourth Circuit has stated that "the Federal Rules of Civil Procedure do not apply to motions under § 3582 . . . because § 3582 motions—which seek only to alter terms of

imprisonment—are criminal in nature." *United States v. Goodwyn*, 596 F.3d 233, 235 n.* (4th Cir. 2010) (emphasis omitted). And, because "'§ 3582(c) does not prevent prisoners from filing successive motions' for compassionate release," courts should treat a defendant's reconsideration motion "as a new motion for compassionate release." *United States v. Hedspeth*, No. 22-6943, 2023 WL 7124547, at *1 (4th Cir. Oct. 30, 2023) (quoting *United States v. Bethea*, 54 F.4th 826, 833 n.2 (4th Cir. 2022)).

Therefore, I will construe the motion as a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i). This renders moot the government's argument that the Motion should be denied as untimely filed. ECF 778 at 14.

It is not clear from the record whether defendant has satisfied the administrative exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A). Nevertheless, I conclude that the government has waived the issue by failing to timely raise it. *Muhammad*, 16 F.4th at 129–30 (stating that because the administrative exhaustion requirement is non-jurisdictional, it can be waived if not timely raised by the government).

### B. Amendment 821

Section 3582(c)(2) of 18 U.S.C. permits a court to reduce the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 924(o)", if the amendment has been made retroactively applicable, and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*; *see United States v. Barrett*, 133 F.4th 280 (4th Cir. 2025); *United States v. Moore*, 2024 WL 2828103, at *1 (4th Cir. June 4, 2024) (per curiam); *United States v. Riley*, ELH-13-0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)); *see also* U.S.S.G. § 1B1.10(a)(2)(B)

(providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guidelines range").

The Fourth Circuit has said that district courts must employ a two-step approach in considering 3582(c)(2) motions. *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016); *United States v. Williams*, 808 F.3d 253, 257 (4th Cir. 2015). "First, a court must determine the defendant's eligibility. Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2). Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Peters*, 843 F.3d at 574 (citing § 3582(c)(2)).[9] "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

Amendment 821 to the Guidelines went into effect on November 1, 2023. *Amendment 821*, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821. It "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024).

Part A of Amendment 821 pertains to criminal history and so called "status points." *Id.* It amended U.S.S.G. § 4A1.1 "by redesignating subsection (d) as subsection (e) and reducing the additional criminal history points assessed to a defendant who committed his offense while under

---

[9] One policy statement provides that courts may not reduce a sentence "to a term that is less than the minimum of the amended guideline range" unless the defendant's original sentence resulted from a downward departure based upon substantial assistance to government authorities. U.S.S.G. § 1B1.10(b)(2); *see United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (concluding that § 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commission").

a criminal justice sentence." *Moore*, 2024 WL 2828103, at *1; *see also Barrett*, 133 F.4th at 282-83. "Criminal justice sentence" under the Guidelines includes probation, parole, supervised release, imprisonment, work release or escape status. U.S.S.G. § 4A1.1(e).

Prior to the amendment, under U.S.S.G. § 4A1.1(d), two points were added to a defendant's criminal history score if the defendant committed the underlying offense while under a criminal justice sentence. But, as now codified in § 4A1.1(e), Amendment 821 limits the assignment of such "status points."

In particular, Amendment 821 permits the assignment of only one status point, and then only if a defendant has seven or more criminal history points. *See* U.S.S.G. § 4A1.1(e). In other words, the amendment eliminates any status points for a defendant who "has six or fewer criminal history points." *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL 3757902, at *1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal history points.").

"The Sentencing Commission gave retroactive effect to the amended Guideline . . . beginning on February 1, 2024." *Moore*, 2024 WL 2828103, at *1; *see Barrett*, 133 F.4th at 283. So, under the new provision, U.S.S.G. § 4A1.1(e), only one "status point" is assessed, and only for those with seven or more criminal history points.

Part B of Amendment 821 provides for a decrease of two offense levels if ten conditions are met. *See* U.S.S.G. § 4C1.1(a). They are, *id.*:

> **(1)** the defendant did not receive any criminal history points from Chapter Four, Part A;
> **(2)** the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> **(3)** the defendant did not use violence or credible threats of violence in connection with the offense;
> **(4)** the offense did not result in death or serious bodily injury;
> **(5)** the instant offense of conviction is not a sex offense;
> **(6)** the defendant did not personally cause substantial financial hardship;

**(7)** the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

**(8)** the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

**(9)** the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

**(10)** the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

### C. Compassionate Release

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under §

3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court, in its discretion, to reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction"; "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and the court has considered the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Crawley*, ___ F.4th ___, 2025 WL 1634789, at *3 (4th Cir. June 10, 2025); *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP). However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all*

*administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276. In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.[10] Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts. The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021). If that first step is met, the court then proceeds to the second step.

Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194;

---

[10] In *Crawley*, 2025 WL 1634789, at *3, the Fourth Circuit identified three criteria. Whether the criteria are referenced as two or three, the substance is the same.

*United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330.  "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647.  Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54.  The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement").  "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners.  *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281.  The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added).  Interpreting this language, the Fourth Circuit said in

*McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."  Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts."  *Id.* (citation omitted).  As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'"  *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended.  *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)).  The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2023) (emphasis added).  Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A).  *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction").  As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not

been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[11]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d); *see Crawley*, 2025 WL 1634789, at *3. "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow. The court must consider the sentencing

---

[11] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384

(quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v.*

*Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

A more detailed explanation may also be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see also* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661.

According to the *Davis* Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). It concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his

sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

#### A. Amendment 821

Wright received four criminal history points based on his prior convictions. ECF 751, ¶¶ 29, 31, 33. At the time the instant offenses were committed, however, defendant was on supervised release in federal court for possession with intent to distribute cocaine, in regard to Case JFM-02-0527. He was also on probation in the State for driving while impaired. *See* Case ER36644; ECF 751, ¶ 34. Therefore, two criminal history points or "status" points were added, pursuant to former U.S.S.G. § 4A1.1(d). *Id.* Wright also committed the offenses here less than two years following his release from prison on July 8, 2003, for his federal drug conviction in case JFM-02-0527. *Id.* ¶ 35. Thus, an additional criminal history "recency" point was added, pursuant to U.S.S.G. § 4A1.1(e). *Id.*

Therefore, Wright had a total of seven criminal history points. *Id.* ¶ 36. This resulted in a criminal history category of IV. *Id.* If defendant were sentenced today, he would have only four points. This equates to a criminal history category of III.

Defendant complains in the 821 Motion, ECF 760 at 1: "In this case, the Defendant committed his instant offense while serving a criminal justice sentence under U.S.S.G. Section 4A1.1(d) that increased his United States Sentencing Guideline Range and criminal history points from 4 to 7." In addition to increasing his Guidelines range, Wright asserts that the status points he was assessed "harms" him while he is incarcerated. *Id.*

The government contends that Wright is not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2). ECF 778 at 9. The government recognizes that defendant was assessed two

status points and one recency point. *Id.* at 6–7 n.2. Moreover, the government acknowledges that Amendment 742 eliminated recency points and that the two status points defendant received "are covered by Amendment 821." *Id.* But, the government maintains that only Amendment 821 was made retroactive by the Sentencing Commission. *Id.* Therefore, the government contends that defendant is not entitled to benefit from Amendment 742. *Id.* Regardless, the government states: "Whether Wright's criminal history is reduced by two points or three points, the result would be the same: a decrease from Criminal History Category IV to III." *Id.* The government correctly asserts that with a total offense level of forty, whether defendant has a criminal history category of III or IV is of no moment. This is because, in either circumstance, the Guidelines call for a sentence ranging between 360 months to life imprisonment. *Id.* at 10.

The government posits, *id.* at 9: "[A] court may only modify a term of imprisonment if the sentencing range that was used to establish the defendant's sentence has subsequently been lowered by the Sentencing Commission." Further, the government observes that, except in circumstances not applicable here, a court "may not reduce a sentence 'to a term that is less than the minimum of the amended guideline range' . . . ." *Id.* (quoting U.S.S.G. § 1B1.10(b)(2)(A). Because defendant's current sentence of 250 months "is already less than the minimum of the amended Guidelines range", the government argues that defendant is not eligible for a sentence reduction. ECF 778 at 10.

In Reply, Wright "concedes that he is ineligible for a sentence reduction in light of Amendment 821 . . . ." ECF 779 at 3. Nevertheless, he "seeks a recalculation of the applicable guidelines through the issuance of an amended presentence report." *Id.*; *see also* ECF 776 (requesting the same).

24

To be eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2), the defendant must have been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ."  18 U.S.C. § 3582(c)(2).  And, any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*

Pursuant to the Sentencing Commission's Policy Statement codified at U.S.S.G. § 1B1.10, a "reduction in the defendant's term of imprisonment is not consistent with this policy statement and is not authorized under 18 U.S.C. § 3582(c)(2) if" a retroactive amendment to the Guidelines, such as Amendment 821, "does not have the effect of lowering the defendant's applicable guideline range."  U.S.S.G. § 1B1.10(a)(2)(B); *see United States v. Nickens*, 668 F. App'x 20, 21 (4th Cir. 2016) (per curiam) ("We have reviewed the record and conclude that the district court correctly determined Nickens was not eligible for a sentence reduction under § 3582(c)(2), because Amendment 782 did not have the effect of lowering his applicable Guidelines range.").  The Policy Statement further provides that, except in cases involving a downward departure because of substantial assistance to the government, a court "shall not reduce" a sentence "to a term that is less than the minimum of the amended guideline range . . . ."  U.S.S.G. § 1B1.10(b)(2)(A); *see also United States v. Spruhan*, 989 F.3d 266, 268 (4th Cir. 2021) (affirming denial of sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) because defendant's sentence was already "well below the 210-month minimum of the amended Guidelines range for his offense."); *United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (U.S.S.G. § 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commissioner.").

There is no dispute that defendant's two status points are barred by Amendment 821.  ECF 778 at 6–7 n.2.  If sentenced today, defendant would not receive any status points, because he did

not have at least seven criminal history points.  *See* U.S.S.G. § 4A1.1(e).  Nor would he receive a recency point.

To be sure, Amendment 742 to the Guidelines eliminated recency points, effective November 1, 2010.  *See* U.S.S.G. § 4A1.1 (2010 Amendments, Editor's and Revisor's Notes). But, Amendment 742 was not made retroactive by the Sentencing Commission.  *See* U.S.S.G. § 1B.10(d); *United States v. Williams*, 808 F.3d 253, 257 (4th Cir. 2015) (To determine whether a particular amendment has the effect of lowering a defendant's applicable Guidelines range, "the sentencing court must 'substitute only the amendments' rendered retroactive by the Commission and 'leave all other guideline application decisions unaffected.'") (quoting U.S.S.G. § 1B1.10(b)(1)).

Wright had a total offense level of forty.  ECF 751, ¶ 25.  A criminal history score of four or five points equates to a criminal history category of III.  U.S.S.G. Ch. 5, Pt. A (sentencing table). But, whether defendant had a criminal history category of III or IV, the Guidelines call for the same sentencing range of 360 months to life.  *Id.*  In other words, the Guidelines range that applied before Amendment 821 would also apply after Amendment 821.  ECF 751, ¶ 45.  Therefore, defendant was not "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see Nickens*, 668 F. App'x at 21; U.S.S.G. § 1B1.10(a)(2)(B).  Moreover, defendant's 250-month sentence is already significantly below the bottom of defendant's Guidelines range.   U.S.S.G. § 1B1.10(b)(2)(A).

In sum, as defendant concedes in the Reply (ECF 779 at 3), he is not eligible for relief under Amendment 821.  Accordingly, I shall deny the 821 Motion.  I will, however, issue a notice,

to be sent to the Warden of FCI Petersburg, reflecting the elimination of two status points, pursuant to Amendment 821.[12]

## B. Compassionate Release

In the Compassionate Release Motion, defendant asks that he "receive immediate release or have [his] time remaining reduced 18 months or 12 months." ECF 771 at 2. In support, he states that, because of his 18 U.S.C. § 924(c) conviction (Count Three), he is "ineligible for First Step Act and Residential Drug Abuse (RDAP) benefits." *Id.* at 1. According to Wright, if he were eligible for First Step Act credits, "it could take one year off of his remaining sentence along with additional halfway house credits." *Id.* Wright adds, *id.*: "If the defendant could receive RDAP benefits he could receive an additional year to 18 months off his remaining sentence." Defendant also states that although he "does not benefit from taking" First Step Act and "ACE" classes, he has still taken a number of them. *Id.* at 2 (citing ECF 771-3; ECF 771-4; ECF 771-5).

Defendant points to several other circumstances in support of his request for sentence reduction. He states that FCI Ray Brook is a "remote facility 8 to 9 hours away from his family" and that the facility "is well above the national average of under staffed facilities of 30%." ECF 771 at 2. "The result of this," according to Wright, is "limited visitation, limited recreation and limited programming." ECF 779 at 2. Wright also points out that he "has remained infraction free since his last incident report in 2018." ECF 771 at 2.

The government maintains that defendant has not established an extraordinary and compelling reason for compassionate release. ECF 778 at 15.[13] It asserts, *id.* at 16: "[C]ourts have

---

[12] A copy is appended to this Memorandum Opinion.

[13] As noted, the government also argues that the Court "should deny Wright's motion for reconsideration as untimely," because it was not filed within fourteen days of the issuance of the Order (ECF 753) granting in part and denying in part defendant's First Motion. ECF 778 at

recognized [that] an inmate's inability to participate in First Step Act time credits programs or in the RDAP program do not constitute extraordinary and compelling reasons for compassionate release." (Citing cases). And, the government posits that evidence of Wright's rehabilitation, standing alone, is insufficient to warrant compassionate release. *Id.* at 17–18.

Wright raises a more specific argument in the Reply concerning his entitlement to First Step Act Credits.[14]  He acknowledges that, pursuant to 18 U.S.C. § 3632(d)(4)(D)(xxii), a "prisoner is ineligible to receive [First Step Act] time credits . . . if the prisoner is serving a sentence for a conviction under" 18 U.S.C. § 924(c). *See* ECF 779 at 2. But, he argues, *id.*: "The use of the singular 'a sentence' requires the B.O.P. to consider the components of his sentence separately." In other words, while Wright recognizes that he is ineligible for First Step Act credits as to his sixty-month sentence for Count Three (18 U.S.C. § 924(c)), he contends that he is eligible for such credits as to his sentences for Counts One, Four, and Five. *See id.*

Defendant also acknowledges that the BOP "is required to aggregate all consecutive and concurrent sentences for administrative purposes . . . ." *Id.*; *see also* 18 U.S.C. § 3584(c) ("Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."). But, according to Wright, "determining eligibility for [First Step Act] credits is not an administrative function." ECF 779 at 2.

The RDAP program is a "three-part drug treatment program with a community-based residential component . . . ." *United States v. Castro*, No. 5:06-CR-54, 2022 WL 4082475, at *4

---

14–15. Because I construe the Motion as a renewed motion for compassionate release, and not a motion for reconsideration, I need not address the government's argument.

[14] Because this argument was raised for the first time in the Reply, the government did not have an opportunity to respond to it.

(W.D. Va. Sept. 6, 2022); *see* 18 U.S.C. § 3621(e); 28 C.F.R. § 550.50 *et seq.* (BOP implementing regulations). Pursuant to 18 U.S.C. § 3621(e)(2)(B): "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [RDAP] program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." However, under 28 C.F.R. § 550.55(b)(5)(ii), an inmate is "not eligible for early release" by way of the RDAP program if he has a "current felony conviction" for an "offense that involved the carrying, possession, or use of a firearm or other dangerous weapon . . . ."

Under the First Step Act, "an eligible prisoner 'who successfully completes evidence-based recidivism reduction programming or productive activities' and who is 'determined by the Bureau of Prisons to be at a minimum or low risk for recidivating' shall earn 15 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." *Cohen v. United States*, No. 1:20-CV-10833, 2021 WL 1549917, at *2 (S.D.N.Y. Apr. 20, 2021) (quoting 18 U.S.C. § 3632(d)(4)(A)); *see also First Step Act Earned Time Credits*, U.S. SENT'G COMM'N (last updated December 11, 2024), https://perma.cc/SG57-7GYZ (The First Step Act "created a system in which some incarcerated individuals can earn time credits for participating in recidivism reduction programming or productive activities. Time credits can later be applied toward early release from secure custody."). But, as noted, pursuant to 18 U.S.C. § 3632(d)(4)(D)(xxii), a "prisoner is ineligible to receive [First Step Act] time credits . . . if the prisoner is serving a sentence for a conviction under" 18 U.S.C. § 924(c). *See also United States v. Mason*, TDC-20-0217, 2023 WL 8005034, at *2 (D. Md. Nov. 17, 2023); *United States v. Bryant*, No. 3:04-CR-00047, 2023 WL 4355053, at *4 n.4 (W.D. Va. July 5, 2023) (citing cases);

*Dahda v. Hudson*, No. 23-3008-JWL, 2023 WL 2815920, at *1 (D. Kan. Mar. 7, 2023) (citing cases).

Defendant argues that the BOP has failed to afford him the First Step Act credits to which he is entitled "by law." ECF 779 at 2. He appears to raise a similar argument with respect to RDAP credits. *See* ECF 771. But, the appropriate vehicle for such challenges is a petition for writ of habeas corpus under 28 U.S.C. § 2241, not a motion for compassionate release. *See, e.g.*, *United States v. Martinez-Veliz*, No. CR 18-3060 KG, 2024 WL 4555655, at *3 (D.N.M. Oct. 23, 2024) ("A request for compassionate relief is not the correct avenue to address a purported denial of First Step Act Credits."); *United States v. Croft*, No. 6:10-CR-01090-DCC-1, 2023 WL 6457767, at *3 (D.S.C. Oct. 4, 2023) ("[A] habeas petition under § 2241, not compassionate release, is the proper way to challenge the computation of a sentence, i.e., a reduction in sentence based on [RDAP or First Step Act] Time Credits."); *United States v. Samal*, No. CR18-0214JLR, 2023 WL 2579887, at *6 (W.D. Wash. Mar. 16, 2023) (alleged miscalculation of First Step Act credits is not the proper subject of a motion for compassionate release; proper vehicle is a petition for writ of habeas corpus under 28 U.S.C. § 2241).

Critically, the Policy Statement does not provide that ineligibility for, or the failure to accrue, First Step Act or RDAP credits constitutes an extraordinary and compelling reason for compassionate release. *See generally* U.S.S.G. § 1B1.13(b); *see also Croft*, 2023 WL 6457767, at *3 ("[U]nder [U.S.S.G.] § 1B1.13, the BOP's failure to reduce a sentence either based on a defendant's completion of RDAP or accumulation of Time Credits, is not an extraordinary or compelling reason."). And, defendant's circumstances are not "similar in gravity" to those situations that are expressly provided in U.S.S.G. §§ 1B1.13(b)(1)–(4). U.S.S.G. § 1B1.13(b)(5).

Therefore, the catchall provision of the Policy Statement, U.S.S.G. § 1B1.13(b)(5), does not aid Wright.

Numerous courts have concluded that ineligibility for, or the failure to accrue, First Step Act or RDAP credits does not qualify as an extraordinary and compelling circumstance. *See, e.g.*, *United States v. Edmond*, 730 F. Supp. 3d 146, 155 (M.D. Pa. April 18, 2024) ("In sum, the Court concludes that Edmond's inability to participate in the RDAP program does not constitute an extraordinary and compelling circumstance sufficient to warrant compassionate release. In so holding, the Court joins the majority of courts in this country that have rejected such an argument.[]"), *reconsideration denied*, 2024 WL 3555373 (M.D. Pa. July 26, 2024); *United States v. Garcia*, No. CR 21-884 (KSH), 2023 WL 6874505, at *2 (D.N.J. Oct. 18, 2023) (defendant's "inability to receive a sentence reduction for completing RDAP due to the nature of his crimes" was not an extraordinary and compelling reason for compassionate release); *Croft*, 2023 WL 6457767, at *3 ("[T]he BOP's failure to reduce a sentence either based on a defendant's completion of RDAP or accumulation of Time Credits[] is not an extraordinary or compelling reason."); *Bryant*, 2023 WL 4355053, at *4 (ineligibility for First Step Act credits does not present an extraordinary and compelling reason for compassionate release); *Samal*, 2023 WL 2579887, at *6 (challenged miscalculation of First Step Act credits did not establish an extraordinary and compelling reason for compassionate release); *Castro*, 2022 WL 4082475, at *5 ("While it is unfortunate for Castro that he is unable to participate in the BOP programs and earn a reduction in his sentence, his ineligibility does not constitute an 'extraordinary and compelling reason' for compassionate release."); *cf. United States v. Atan*, No. 15-20562, 2020 WL 6130906, at *3 (E.D. Mich. Oct. 19, 2020) (citing cases and explaining that suspension of the RDAP program does not constitute an extraordinary and compelling circumstance).

31

Courts have also rejected the argument raised by Wright that his sentences must be considered separately for purposes of awarding First Step Act Credits. *See, e.g.*, *Teed v. Warden Allenwood FCI Low*, No. 23-1181, 2023 WL 4556726, at *2 (3d Cir. July 17, 2023) (rejecting the argument), *cert. denied*, 144 S. Ct. 873 (2024); *Chambers v. Warden Lewisburg USP*, 852 F. App'x 648, 650 (3d Cir. 2021) ("The BOP was permitted to aggregate Chambers's otherwise-consecutive sentences into a single unit for purely administrative purposes, such as—at issue here—calculating GTC under 18 U.S.C. § 3624."); *Richardson v. Warden, FCI Edgefield*, No. CV 4:23-4770-DCC-TER, 2024 WL 1862195, at *3 (D.S.C. Feb. 8, 2024) (rejecting the argument and citing a plethora of cases in support), *report and recommendation adopted*, No. 4:23-CV-04770-DCC, 2024 WL 1861555 (D.S.C. Apr. 29, 2024); *Wallace v. Knight*, No. CV 22-6705 (KMW), 2023 WL 4954727, at *1 (D.N.J. Aug. 3, 2023) ("Because Petitioner's current aggregate sentence includes a term for a conviction under § 924(c), he is statutorily ineligible for the credits he seeks."); *Bryant*, 2023 WL 4355053, at *4 ("Because Bryant is serving his § 924(c) sentence as part of 'a single, aggregate term of imprisonment,' he is statutorily ineligible to receive FSA time credits."); *see also Barnes v. Warden*, ELH-23-2333, 2024 WL 3275477, at *5–*6 (D. Md. July 2, 2024).

Defendant also points to his rehabilitative efforts while incarcerated, and he raises issues with the conditions of his confinement at FCI Ray Brook. In particular, Wright states that the facility is "under staffed", ECF 771 at 2, which leads to "limited visitation, limited recreation and limited programming." ECF 779 at 2. News reports corroborate Wright's claim that the facility was or is under-staffed. *See, e.g.*, Aaron Cerbone, *Union: Prison 'dangerously understaffed'*, ADIRONDACK DAILY ENTERPRISE (Sept. 23, 2022), https://perma.cc/37Y5-G7AZ. But, Wright is no longer housed at FCI Ray Brook. And, Wright's rehabilitation, standing alone, is insufficient

to establish an extraordinary and compelling circumstance.  U.S.S.G. § 1B1.13(d); *Crawley*, 2025 WL 1634789, at *3.

For the above reasons, defendant has not established an extraordinary and compelling reason for compassionate release.

### C.  18 U.S.C. § 3355(a)

Even assuming defendant has established eligibility for sentence reduction, that finding would not end the inquiry.  The Court must next consider the sentencing factors in 18 U.S.C. § 3355(a).  These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As I stated in my Memorandum Opinion of June 10, 2022, ECF 752 at 30:

> There is no doubt that Wright's crime was extremely grave.  He played a significant role in an extensive drug conspiracy, involving large quantities of illegal substances.  And, Judge Legg observed at sentencing that Wright played a role in the murder of Fernando Rodriguez, by assisting in disposing of the corpse.  ECF 419 at 22.  Furthermore, defendant has a serious criminal history.  This includes a prior federal drug conviction that resulted in a 24-month sentence.  ECF 751, ¶ 36.  Therefore, a lengthy sentence of incarceration was, and remains, appropriate.

Defendant also illegally possessed a firearm in furtherance of the drug conspiracy.  Drugs and guns are a dangerous combination.  *See United States v. Blackwell*, JKB-10-493, 2020 WL 833571, at *2 (D. Md. Feb. 19, 2020) ("There is no serious dispute that the illegal drug business brings with it violence, often lethal and on a large scale.  The Court finds and concludes that those who participate in and profit from large scale, illegal drug trafficking activities are engaging in conduct that at least indirectly leads to widespread violence.").

To be sure, defendant has demonstrated several positive accomplishments while incarcerated. For example, Wright obtained his GED. ECF 771-3. He has also completed a number of educational and vocational courses. *See* ECF 771-3 through ECF 771-5. Moreover, to the Court's knowledge, Wright has incurred just four infractions over the course of almost seventeen years of incarceration. *See* ECF 719-6 at 1–2 (BOP disciplinary record submitted in connection with the First Motion); ECF 771 at 2 (Wright argues that he "has remained infraction free since his last incident report in 2018."). But, less than three years ago, I took those circumstances into account in significantly reducing defendant's sentence from 384 months of incarceration to 250 months.

## IV.  Conclusion

In my view, a further reduction of defendant's sentence is not warranted. A sentence of 250 months of incarceration remains appropriate.

For the foregoing reasons, I shall deny the Compassionate Release Motion (ECF 771) and the 821 Motion (ECF 760). An Order follows.


Date: June 13, 2025                                    _____/s/_____
                                                       Ellen Lipton Hollander
                                                       United States District Judge